CONCERNED COMMUNITY IN-
VOLVED DEVELOPMENT,
INC., Appellant,

v.

CITY OF HOUSTON, Candlelight Development Joint Venture, Candev, L.C., Candlelight Place Development, L.L.C., and Lazer Construction Company, Inc., Appellees.

No. 14–05–01254–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 26, 2006.

Rehearing Overruled Dec. 21, 2006.

David H. Melasky, Houston, for appellant.

Michael A. Stafford and Elizabeth Pool Stevens, for City of Houston.

Alvin Lee Freeman, Elizabeth Pool Stevens, Michael A. Stafford, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

J. HARVEY HUDSON, Justice.

Concerned Community Involved Development, Inc. ("CCID") sought a temporary and permanent injunction against the City of Houston ("the City"), Candlelight Development Joint Venture, and various other real estate development and construction entities (referred to collectively as "Candlelight") to prevent the construction of a bridge. The City filed a plea to the jurisdiction. The trial court conducted separate hearings on (1) CCID's request for injunctive relief and (2) the City's plea to the jurisdiction. In a single order, the trial court denied CCID's request for injunctive relief and granted the City's plea to the jurisdiction. In two points of error, CCID contends the trial court erred in (1) overruling its due process claims by denying injunctive relief and (2) granting the City's plea to the jurisdiction. We affirm, in part, and reverse and remand, in part.

### BACKGROUND FACTS

Candlelight Estates is a residential subdivision in Houston's northwest quadrant. The northern boundary of sections 1 and 2 of the subdivision is marked by a Harris County Flood Control District (the "District") drainage ditch. Rosslyn Road runs through northwest Houston in a generally north-south direction, but for want of a bridge, there is no through traffic across the drainage ditch. Accordingly, the road dead ends on both sides of the ditch.

Candlelight sought to facilitate the development of its property north of the ditch by constructing a bridge across the drainage ditch on Rosslyn Road. Candlelight sought approval from the District, and, in 2001, the District approved Candlelight's request to construct a bridge across the ditch. *City of Houston v. Grudziecke,* No. 14–02–00947–CV, 2003 WL 1922671, at *1 (Tex.App.-Houston [14th Dist.] Apr. 24, 2003, no pet.) (mem.op.). However, the proposed construction provoked opposition from citizens living in sections 1 and 2 of Candlelight Estates. Nevertheless, the City of Houston issued a permit for construction of the bridge. *Id.* Homeowners in the area sought an injunction in the 157th District Court against the City, Candlelight, and others to prohibit the construction of the bridge, contending that such construction constituted trespass and nuisance, violated section 11.086 of the Texas Water Code, and was an unconstitutional taking of their property. *Id.*

The City filed a plea to the jurisdiction contending the district court lacked subject matter jurisdiction because the homeowners did not suffer a taking under the Texas Constitution and, thus, suffered no injury. *Id.* at *4. We held the trial court had no subject matter jurisdiction because claims of inverse condemnation must be filed in the county court. *Id.* at *5. For reasons that are not entirely clear in our record, Candlelight subsequently abandoned its plan to build the bridge as designed. The original plan called for the bridge to be built on box culverts. Thereafter, Candlelight sought to build a "span" bridge across ditch, apparently necessitating an application for a new permit.

In March 2004, Candlelight submitted to the City its plans to construct paving and drainage facilities in conjunction with the installation of the Rossyln Road bridge. On October 11, 2005, the City's Department of Public Works and Engineering once again approved a permit authorizing Candlelight to construct a bridge across the ditch. Shortly thereafter, CCID, a non-profit corporation organized to protect the homes and properties of landowners in

the vicinity of the proposed bridge, filed an application for injunctive relief in the 281st District Court. CCID alleged the permit issued by the City is void because it was based on "secret proceedings" that violated CCID members' rights to (1) federal due process under the federal constitution; (2) due course of law under the state constitution; (3) the Open Meetings Act; and (4) the Public Information Act. CCID also sought injunctive relief under section 1983 of the United States Code, chapter 42.[1]

The City again filed a plea to the jurisdiction alleging CCID lacked standing to bring its claims, that CCID is essentially making another inverse condemnation claim, and that its statutory claims lack merit. After a hearing, the trial court (1) denied CCID's request for injunctive relief and (2) granted the City's plea to the jurisdiction. Because the determination of jurisdiction is our first duty, we will address appellant's points in reverse order.

## PLEA TO THE JURISDICTION

■ In its plea to the jurisdiction, the City alleged it was apparent from the pleadings that CCID lacked standing to sue.[2] For reasons other than those espoused by Candlelight in its plea to the jurisdiction, we find CCID lacks standing to sue.[3]

■ The doctrine of standing identifies suits appropriate for judicial determination. *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001). "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993) (quoting *Bd. of Water Engineers v. City of San Antonio,* 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)). Unless standing is conferred by statute, a plaintiff must demonstrate that he "possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara,* 52 S.W.3d 171, 178–79 (Tex.2001); *see also Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984) (stating that standing consists of some interest peculiar to person as individual and not as member of general public). It is the plaintiff's burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46. Standing is a question of law subject to de novo review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). As a component of subject matter jurisdiction, standing is never presumed and cannot be waived. *Tex. Ass'n of Bus.,* 852 S.W.2d at 443–4. We apply

1. CCID also sought, under the Texas Uniform Declaratory Judgments Act, an order declaring that the City was violating public rights conferred by the state and federal constitutions.

2. The City also argued that—to the extent CCID asserted a takings claim—the district court lacks jurisdiction; CCID's argument it has a due process right to participate in the City's permitting process is "baseless"; CCID has not stated valid open records or meetings claims to confer jurisdiction; CCID sought a declaratory judgment solely to recover attorney's fees; and CCID lacks standing because particularized, individual proof of money damages for any alleged negative impact on property values is necessary.

3. The City contends CCID lacks standing and cites the test for associational standing. However, the record reveals that CCID received assignments from various property owners in the vicinity of the proposed Rosslyn Road bridge, and it brings this action in its own capacity, based upon those assignments. Because we find CCID lacks standing on grounds not argued by the City, we use the standard of review mandated when appellate courts review standing sua sponte.

the same standard of review to determine standing as we do to determine subject matter jurisdiction generally. *Id.* at 446. Here, we construe the petition in favor of CCID and review the entire record to determine whether any evidence supports standing. *Id.*

CCID is a Texas non-profit corporation and its president, David Eng, lives on Rosslyn Road. The record contains ten documents assigning to CCID:

> all causes of action which are, or may be, necessary to prevent, or recover compensation for, damage to [the homeowner's property] occasioned by reason of the actual or possible construction of the proposed bridge in the 4400 to 4600 block of Rosslyn Road, and the associated modifications of Rosslyn Road.

The assignments were executed by property owners who live "from directly on the 4400 block of Rosslyn Road, [David Eng] and those neighbors, as well as to the intersection of Bethlehem and Rosslyn and to even flanking streets." [4]

The City argues the trial court has no subject matter jurisdiction because CCID's real claim is an unconstitutional "taking" of property which must be heard in the county civil court at law. CCID strenuously denies this assertion, stating it seeks no damages or compensation for the alleged violation of its members' rights as property owners. However, CCID's petition speaks in terms of protecting "property interests," the "deprivation of homeowner rights," "irreparable harm to the properties," "affecting the property values of the homes in the vicinity," and preventing "permanent adverse consequences to the property owners." CCID concedes that property owners in the vicinity of the proposed bridge will suffer no *compensa-*

*ble* injury by its construction. However, CCID claims it was entitled to injunctive relief because (1) property rights will be adversely affected by construction of the bridge, (2) property owners were irreparably harmed by the City's denial of due process, and (3) property owners have no adequate remedy at law.

 Rights, constitutional and otherwise, do not exist in a vacuum. *Wilson v. Taylor*, 658 F.2d 1021, 1032 (5th Cir.1981). The Due Process Clause is only activated when there is some substantial liberty or property interest which is deserving of procedural protections. *Roane v. Callisburg Indep. Sch. Dist.*, 511 F.2d 633, 637 (5th Cir.1975). By its terms, the Due Process Clause safeguards "life, liberty, or property." *Id.* at 637–38. To have a property interest, a person must have more than an abstract need or desire for it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Further, he must have more than a unilateral expectation of it. *Id.* He must, instead, have a legitimate claim of entitlement to it. *Id.*

CCID offered evidence that property values on Rosslyn Road will be diminished by construction of the bridge. CCID also offered testimony that property owners will be inconvenienced by the bridge and might have to take a circuitous route in and out of their respective driveways. Finally, CCID offered evidence that the approach to the bridge will be unsafe because the lanes narrow too quickly.

 All enhancements, whether public or private, are rarely achieved without some inconvenience. If the public authorities could never build, repair, en-

---

4. Taken from the testimony of David Eng at the hearing on CCID's motion for temporary injunction.

hance, or alter a street or highway without consulting all "affected" property owners, permitting them to alter the design of the project, or paying all persons along such thoroughfares for the inconvenience and disruption occasioned by the construction, no public improvements would ever be made. Streets and highways are primarily for the benefit of the traveling public, and only incidentally for the benefit of property owners along its way. *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144, 145 (Tex.Civ.App.-San Antonio 1933, writ ref'd). Thus, a landowner suffers no compensable injury where the government has not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 450 (Tex. 1992).

Here, there is no evidence that the bridge will be constructed on the land of any private person; that any property owner will be denied access to his property; or that any property owner will be restricted in the use of his property. It may well be that property owners along Rosslyn Road will suffer a diminution in the value of their property due to increased traffic, noise, et cetera. However, it is well established that " 'The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities.' " *Humphreys*, 58 S.W.2d at 145 (*quoting Heller v. Atchison, T. & S.F.R. Co.*, 28 Kan. 625 (1882)). Thus, recovery is not permitted if the injury is one suffered by the community in general. *Felts v. Harris County*, 915 S.W.2d 482,

484 (Tex.1996). Community injuries include highway traffic noise, dust, traffic hazards, and circuitous routes; injuries such as these are not compensable. *Id.* at 485. Periodic street improvements are simply an incident of city life and must be endured. The law gives the adjacent property owner no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286, 289 (1950).

CCID concedes that the property owners have no compensable damages, but nevertheless insists that because some ephemeral, non-compensable, previously unrecognized property interest will be "affected" by the construction, state and federal due process protections come into play, and an injunction is necessary.

We are unaware of any cognizable property interest that might be impacted by the City other than an unconstitutional taking of property prohibited by article I, section 17 of the Texas Constitution. CCID has consistently denied that its claim is a takings claim.[5] Therefore, CCID has failed to show any particular injury on which to sue. After fully reviewing the record, and after construing the petition in favor of CCID, we find CCID lacks standing to sue. We overrule CCID's second point of error in part, to the extent it is based on federal and state due process and any related attempt to obtain a declaratory judgment or injunctive relief for want of subject matter jurisdiction. Because a claim (a) shall be a real

---

**5.** We agree with the City's contention that, notwithstanding CCID's elaborate attempt to circumvent the exclusive jurisdiction of the county court, this suit is, in reality, based upon a disguised claim of inverse condemnation. Exclusive jurisdiction in inverse con-

demnation claims is vested with the Harris County Civil Courts at Law, pursuant to section 25.1032(c) of the Government Code. *Kerr v. Harris County*, 177 S.W.3d 290, 294 (Tex. App.-Houston [1st Dist.] 2005, no pet.).

controversy between the parties, which (b) will be actually determined by the judicial declaration sought, we find CCID lacks standing to bring a claim for injunctive relief. Accordingly, we overrule CCID's second issue on appeal.

## OPEN MEETINGS AND PUBLIC INFORMATION ACTS

CCID also petitioned the trial court for relief under the Texas Open Meetings and Public Information Acts. *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 2004) (requiring every regular, special, or called meeting of a governmental body to be open to the public); TEX. GOV'T CODE ANN. § 552.001 (Vernon 2004) (stating public policy mandates that "each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees."). Each of these statutes confers standing to CCID. *See id.* at § 552.001 (giving "each person" the right to complete information about most governmental affairs); *Burks v. Yarbrough*, 157 S.W.3d 876, 880 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (interpreting the Open Meetings Act broadly to confer standing on any member of the interested public).

In one order, and without stating its reasoning, the trial court granted the City's plea to the jurisdiction and denied CCID's request for injunctive relief.

 Whether a plaintiff has alleged facts affirmatively demonstrating a trial court's subject matter jurisdiction is a question of law we review de novo. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). We construe the pleadings liberally in favor of the plaintiffs, looking to their intent. *Lacy v. Bassett*, 132 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2004, no pet.). If the pleadings do not contain sufficient facts to affir-

matively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiff should be allowed an opportunity to amend. *Id.* A plea to the jurisdiction may be granted without allowing any opportunity to amend if the pleadings affirmatively negate the existence of jurisdiction. *Id.* To prevail, the defense must show that, even if all allegations in plaintiff's pleadings are true, there remains an incurable jurisdictional defect on the face of the pleadings that deprives the trial court of subject matter jurisdiction. *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 56 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

 In its plea to the jurisdiction, the City argued that CCID did not make valid open records or open meetings claims to confer jurisdiction. Regarding the open meetings claim, the City argued its permitting process does not involve a "governmental body" as defined by the Act. This argument attacks CCID's right of recovery under the statute and should have more properly been made in a motion for summary judgment; it does not attack the trial court's subject matter jurisdiction. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex.2000) (quoting 21 C.J.S. *Courts* § 16 at 23 (1990)) (" 'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.' "). Regarding the open records claim, the City argued CCID did not allege it had submitted a written request for information, that it lacks standing because CCID was not a "requestor" as defined by the Act, or that the appropriate remedy is an action for mandamus. The failure to comply in all respects with statutory requirements may defeat a claimant's

right to relief but, again, it does not deprive the trial court of subject matter jurisdiction. *Id.* We make no judgment regarding the merits of these claims or their likely success if and when they are presented in a motion for summary judgment. However, it was error to dispose of CCID's Open Meetings Act and Public Information Act claims in a plea to the jurisdiction. Appellant's first issue for review is sustained.

Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings in accordance with this opinion.